IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>GREEN ACRES MHP, LLC,<br><br>                Debtor(s). | CASE NO. BK 22-80635-TLS<br><br>CHAPTER 11 Subchapter V<br><br>ADV. NO. A23-8003-TLS |
| GREEN ACRES MHP, LLC,<br><br>                Plaintiff(s)<br>vs.<br><br>GEORGE DUNLOP, JR., and LAURIE DUNLOP, individuals; JEFF FLINT, an individual; JORGE BARBOSA, an individual; KENNETH COX, an individual; TIMOTHY. FISCUS, an individual; SARA IZAZAGA HURTADO, an individual; SCOTT TAYLOR and CHRISTINA TAYLOR, individuals; MARIA GOTTSCH, an individual; FRANCISCO GUZMAN, NANCY GUZMAN, ARACELI GUZMAN, and EDUARDO E. GUZMAN, individuals; CHRISTIAN YURK and CARMON YURK, individuals; JOSE JIMENEZ and GABRIELLA BALDERAS JIMENEZ, individuals; SCOTT DESPLINTER and JILLENE DESPLINTER, individuals; ALBERTO TORRES, SR. and ALICIA VASALLO, individuals; and REO ASSET MANAGEMENT COMPANY LLC, a Nebraska limited liability company,<br><br>              Defendants(s). | **ORDER** |

      This matter is before the court on the plaintiff-debtor's amended motion for summary judgment (Fil. No. 68). No objection was filed. David J. Skalka and Scott D. Jochim represent the plaintiff, Trev E. Peterson represents defendants Scott & Christina Taylor, and Rebecca Abell Brown represents defendants George & Laurie Dunlop. Evidence and a brief were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted.

This adversary proceeding was filed "to have the Court determine that there are no effective covenants, agreements that run with the land, or easements that require Plaintiff to deliver water to Whispering Pines lots, leaving a determination of the structure of how water will be provided and the fees to be charged to presentation within a future plan of reorganization to be proposed by Plaintiff in the bankruptcy proceeding." This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## BACKGROUND

The Chapter 11 Subchapter V debtor in this case is a manufactured-home community known as Green Acres located in the village of Nickerson, Nebraska. The current owners acquired Green Acres in 2007, but it was developed some years previously by the late William Oliver and his wife, Lois. Green Acres consists of 82 lots, 50 of which are currently rented to homeowners and six more have homes to be sold. Green Acres supplies water to its own tenants, with the cost included in the rental charges. In addition, Green Acres is contractually bound to provide water to a collection of 14 lots adjacent to Green Acres known as Whispering Pines. These lots are billed separately for their water. The Whispering Pines properties consist of lots sold by prior owners of Green Acres to individual owners in the early 2000s, and providing water service appears to have been a prerequisite to making the sale.

Previously, Green Acres has offered water service contracts to Whispering Pines lot owners, but not everyone has been willing to sign the agreements. As a result, Green Acres is providing water to Whispering Pines at a financial loss, which led to this bankruptcy. Evidently, no sustainable payment mechanism was set up when Green Acres began supplying water to its neighbors. Green Acres delivers the water to Whispering Pines communally, rather than via pipes to individual lots, so if Green Acres were to shut off the water for one lot's non-payment, all lots would be affected (other than the handful of lots that have wells and do not use the water from Green Acres).

In November 2020, Green Acres filed a state court lawsuit against the Whispering Pines lot owners seeking declaratory relief to determine whether applicable covenants and agreements require it to supply water to Whispering Pines, and if so, to establish "an economical, uniform, and equitable method of provision of water to the Whispering Pines subscribers, so that the costs of providing that water can be equitably and non-discriminatorily divided among the subscribers." State Court Compl. ¶ 66 (Ex. 4 to Fil. No. 70). One Whispering Pines lot owner filed a counterclaim asking for an accounting and other relief. In May 2022, the state court stayed any rate increases for the water service, required Green Acres to continue providing water, and ordered the rates paid by the homeowners to be frozen as of the date the state court complaint was filed. Green Acres then moved to dismiss the lawsuit; because of a pending counterclaim which requested an accounting and an injunction against raising the water rates, and a request for attorneys' fees, the state court scheduled the dismissal motion for hearing on August 26, 2022. Green Acres filed its Chapter 11 Subchapter V bankruptcy petition on August 25, 2022, thereby staying the state court proceedings.

In its bankruptcy case, the debtor proposed a plan of reorganization (Fil. No. 38) by which it seeks to enforce certain terms in the covenants, easement, and joint use and maintenance agreements requiring Whispering Pines lot owners to reimburse Green Acres for installation and maintenance costs for the wells and water lines, and to activate a homeowners' association ("HOA"). The debtor would bill the HOA $1,000 per month for water usage. That rate is subject to future adjustments. The HOA could then approve assessments on each lot to pay for water service and enforce non-payment by filing a lien against the property.

The plan also proposed to sell approximately $190,000 in pre-petition accounts receivable (unpaid water bills) to a third party for $500, relieving the debtor of devoting resources to collecting past-due debts and easing accounting issues by making clear that incoming water payments should be applied to post-petition usage.

Two lot owners objected to these provisions. At the hearing on the plan in January 2023, the court denied confirmation and expressed concern about the rights of parties not subject to the bankruptcy court's jurisdiction, suggesting that an adversary proceeding would be an appropriate way to bring all interested parties before this court for an adjudication of their rights. The debtor then filed this adversary proceeding on February 7, 2023, against the Whispering Pines lot owners, and moved for summary judgment. The Taylor defendants objected, and pointed out that none of the covenants upon which the plaintiff relies are effective against the Taylors' real property. Green Acres then conceded there are no presently effective covenants governing the relationship between it and the Whispering Pines lot owners with regard to providing water, and asked the court to declare that Green Acres has no obligation to provide water to Whispering Pines.

The court then held a status hearing at which Green Acres withdrew the motion for summary judgment. The court gave the parties additional time to evaluate whether they would be able to reach agreement on the matters in dispute, or at least to narrow down the scope of the disputed issues.

Green Acres subsequently filed the amended summary judgment motion presently before the court, asking the court to enter a default judgment against the non-responding defendants, permit the debtor to reject certain contracts and to use the plan approval process to determine an appropriate amount for the defendants to pay each month for water and for the costs of providing water to their lots, and allow the debtor to stop providing water if the debtor does not receive payment for doing so.

Green Acres seeks a judgment enforcing prior agreements between it and the Whispering Pines lot owners, such as the covenants and the joint use and maintenance agreement, so the debtor can obtain plan confirmation and move forward with its proposed manner of getting paid for the water it provides. The owners of just two of the lots answered the complaint. The rest of the defendants are in default.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.'" *Agrifund, LLC v. Heartland Co-op*, 8 F.4th 660, 664 (8th Cir. 2021) (quoting *Bruhn Farms Joint Venture v. Fireman's Fund Ins.*, 823 F.3d 1161, 1165 (8th Cir. 2016) (cleaned up)). "A dispute of fact is genuine if a factfinder could reasonably determine the issue in the non-moving party's favor. A factfinder can reasonably reach a conclusion if that conclusion is based on sufficient probative evidence and not on mere speculation, conjecture, or fantasy." *Singleton v. Arkansas Housing Authorities Prop. & Cas. Self-Insured Fund, Inc.*, 934 F.3d 830, 835 (8th Cir. 2019) (cleaned up). "But to be sufficient, evidence must do more than merely allow the factfinder to guess between possible explanations. Factfinders cannot fill the gaps in the evidence with speculation." *Id.* at 837 (cleaned up).

To withstand a motion for summary judgment, the non-moving party "has an affirmative burden to designate specific facts creating a triable controversy." *Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (internal citations omitted). Failure to oppose a basis for summary judgment constitutes a waiver of that argument. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734-35 (8th Cir. 2009). "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)) (internal marks omitted).

## FACTUAL FINDINGS

The debtor's request for relief in its amended complaint is premised on the enforcement of certain terms in the 2004 Declaration of Covenants, Conditions, Restrictions, and Easements for Whispering Pines Homeowners Association, Formerly Known as Green Acres Homeowners Association ("2004 Covenants") and the 1998 Joint Use and Maintenance Agreement ("the JUMA"). However, defendants Scott and Christina Taylor pointed out – and the debtor concedes – that the 2004 Covenants were not properly executed and are not effective. Accordingly, Green Acres asserts it has no obligation, aside from personal contracts that may be rejected, to provide water to the lot owners of Whispering Pines.

The following facts established by the evidence are undisputed:

1. The plaintiff has served all defendants in the above-captioned matter.

2. Following service upon all defendants, only George Edward Dunlop, Jr., and Laurie Dunlop and Scott Taylor and Christina Taylor filed responsive pleadings. All other defendants have defaulted by their failure to appear and/or file a responsive pleading.

3. William R. Oliver and Lois J. Oliver, not parties herein, were the developers of the Dodge County subdivision called Green Acres, and owned real estate including Lots 6,

      7, and 80, Green Acres, a subdivision as surveyed, platted, and recorded in Dodge County, Nebraska.

4. Water wells were drilled on Lots 6, 7, and 80 in Green Acres sometime prior to June 12, 1998.

5. Plaintiff is the debtor herein, and is the successor in title to Lots 6, 7, and 80 in Green Acres.

6. Defendants George Dunlop and Laurie Dunlop are Nebraska residents and owners of Lots 90 and 91 in Green Acres.

7. Defendants Scott Taylor and Christina Taylor are Tennessee residents and owners of Lot 97 in Green Acres.

8. Lots 90 through 105 in Green Acres are commonly referred to as "Whispering Pines."

9. The Declaration of Covenants, Conditions, and Restrictions and Easements for Green Acres, Lots 90 through 105, dated May 7, 1998, were recorded with the Dodge County Register of Deeds on May 7, 1998, at Book 1998, Page 2794 (hereinafter, "1998 Covenants").

10. The Agreement and Easement dated May 7, 1998, was recorded with the Dodge County Register of Deeds on May 7, 1998, at Book 1998, Page 2795.

11. The May 7, 1998, Agreement and Easement does not define the grantee land, nor is the document signed by any grantee.

12. The Joint Use and Maintenance Agreement ("JUMA") dated June 12, 1998, was recorded with the Dodge County Register of Deeds on June 12, 1998, at Book 1998, Page 3659.

13. The Declaration of Covenants, Conditions, Restrictions, and Easements for Whispering Pines Homeowners Association, formerly known as Green Acres Homeowners Association, Lots 90 through 105, dated September 14, 2004, was recorded with the Dodge County Register of Deeds on September 16, 2004, at Book 2004, Page 6890 (hereinafter, the "2004 Covenants").

14. The signatures on the 2004 Covenants are not notarized.

15. The Water Service and Water Users Agreement regarding Lot 93 was executed on March 29, 2013, and recorded with the Dodge County Register of Deeds on April 4, 2014, at Instrument No. 201401324.

16. The Water Service and Water Users Agreement regarding Lot 94 was executed March 29, 2013, and recorded with the Dodge County Register of Deeds on April 4, 2014, at Instrument No. 201401324.

17. Lot 100 in Green Acres was eliminated in 2009 when it was combined with Lots 99 and 101 in Green Acres.

18. The Affidavit of the Village Clerk of Nickerson, Nebraska, regarding the division of Lot 100, Green Acres Addition, Village of Nickerson, Dodge County, Nebraska, was recorded with the Dodge County Register of Deeds on June 15, 2009, at Book 2009, Page 3048.

19. The Green Acres Homeowners Association, called the Whispering Pines Homeowners Association in the 2004 Covenants (the "Association"), has never been formed as an entity at any time.

20. Plaintiff has provided potable water to Lots 92, 95-99, and 102-105 in Green Acres, and has made potable water available to Lots 90, 91, 93, 94 and 101 in Green Acres.

21. Plaintiff has sought payment directly from individual lot owners, including but not limited to, the Dunlops and the Taylors.

22. Plaintiff has not been providing water to Lots 93 and 94 pursuant to recorded agreements.

23. Plaintiff has made water available to Lots 90, 91, and 101, but those lot owners represent that they have drilled their own wells and that they have disconnected from the common piping and no longer use water from the plaintiff. Those lot owners have not made any payments to the plaintiff — including for maintenance of the water system — for many years prior to Green Acres' bankruptcy petition. The alleged disconnection and ceasing of payment was done unilaterally by those lot owners and without the plaintiff's consent or any agreement with the plaintiff to waive those lot owners' responsibility to pay for water service .

24. No covenant, easement, or other obligation running with the land provides the plaintiff with the ability to assess and place liens against lots that do not pay for water.

25. The plaintiff's and Whispering Pines' water system has no means to shut off water to an individual lot in Whispering Pines.

26. At the time of the debtor's bankruptcy filing, no defendant was current on payment of water charges, and many were years in arrears.

27. The 1998 Covenants no longer bind the plaintiff and the defendants and their real estate, as the 1998 Covenants expired by their terms on May 7, 2018.

28. Because the 2004 Covenants have no effect and because the 1998 Covenants' effectiveness was not extended, any obligation upon the plaintiff to provide water to Lots 90 through 105 in Green Acres, pursuant to covenants, agreements that run with the land, or easements, ceased on May 7, 2018.

29. The JUMA provides that the Association will take charge of, repair, and maintain the water distribution lines from the wells to the individual lots and will assess the costs thereof to the owners of the lots, the defendants herein, as part of the fees and assessments of the Association.

30. No effective recorded covenant, easement, or any other agreement running with the parties' real estate requires the plaintiff to provide water to Lots 90 through 105 in Green Acres for a predetermined fixed charge or for an amount to which the plaintiff does not presently consent.

31. No effective recorded covenant, easement, or other obligation running with the land requires the plaintiff to provide Lots 90 through 105 in Green Acres with any water on credit, *i.e.*, the plaintiff is not required to provide water without first being paid amounts owed to it for maintenance of the system and provision of water.

## DISCUSSION & CONCLUSION

In light of the evidence presented in support of this motion, the court is left with no factual dispute to resolve. Therefore, the amended motion for summary judgment will be granted and the debtor can address the matter of providing and receiving payment for water to Whispering Pines in its plan of reorganization.

IT IS ORDERED:

1. The plaintiff's amended motion for summary judgment (Fil. No. 68) is granted.

2. Defendants Jeff Flint, Jorge Barbosa, Kenneth Cox, Timothy Fiscus, Sara Izazaga Hurtado, Maria Gottsch, Francisco Guzman, Nancy Guzman, Araceli Guzman, Eduardo E. Guzman, Christian Yurk, Carmon Yurk, Jose Jimenez, Gabriella Balderas Jimenez, Scott Desplinter, Jillene Desplinter, Alberto Torres, Sr., Alicia Vasallo, and REO Asset Management Company LLC have been properly served in this matter and have failed to plead or defend the matter or answer in a timely manner and are in default.

3. Each of those aforesaid defendants who is a person and not a corporate entity is not an infant or incompetent person under Fed. R. Bankr. P. 7055(b)(2), and not in the military service of the United States as set forth in the Servicemembers Civil Relief Act, 50 App. U.S.C.A. § 521.

4. The 1998 Covenants expired by its terms on May 7, 2018, and no longer binds the real estate it is recorded against.

5. The May 7, 1998, "Agreement and Easement" has no effect on the real estate it is recorded against because the real estate of the grantees is undefined and because no one on behalf of the named grantees signed the document to evidence agreement to the grantees' obligations within the document.

6. The September 16, 2004, Declaration of Covenants for Whispering Pines is of no effect because its signatures are not notarized and does not include many of the signatures of the lot owners at issue in this matter.

7. The June 12, 1998, "Joint Maintenance and Use Agreement" is presently not effective and cannot become effective because a party to the Agreement, the Green Acres Homeowners' Association authorized by the Covenants with assessment authority and other powers, has never existed and can no longer be created.

8. Exhibit G to the Complaint eliminated Lot 100, Green Acres.

9. The JUMA's terms provide the Homeowners' Association will take charge of, repair, and maintain the water distribution lines from the wells to the individual lots and will assess the costs thereof to the owners of the lots, the defendants herein, as a part of the fees and assessments of the Association.

10. To date, the plaintiff has been performing the Association's responsibilities set forth above.

11. No effective recorded covenant, easement, or any other agreement running with the parties' real estate requires the plaintiff to provide water to Lots 90 through 105 in Green Acres for a predetermined fixed charge or for an amount to which the plaintiff does not presently consent.

12. No effective recorded covenant, easement, or other obligation running with the land requires the plaintiff to provide Lots 90 through 105 in Green Acres with any water on credit, *i.e.*, the plaintiff is not required to provide water without first being paid amounts owed to it for maintenance of the system and provision of water.

13. The plan of reorganization approval process in the underlying bankruptcy is an adequate means for notice and due process to propose and set a monthly amount or formula to determine an amount to charge the defendants for (A) the plaintiff's cost for installation, repair, testing, maintenance, and utility costs for the wells; (B) the cost in paragraph 9 above performed by the plaintiff or contracted with the plaintiff to perform; and (C) the plaintiff's charges for the actual provision of water to Lots 90 through 105 above and beyond (A) from and after the filing of the plaintiff's petition for relief to the extent not otherwise paid.

14. If the plaintiff is not paid for costs and fees owed to it for provision of water when due, the plaintiff is permitted to cease providing water to Lots 90 through 105 in Green Acres with reasonable advance notice or as required by applicable Nebraska law.

Separate judgment will be entered.

Dated: August 28, 2023.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge

Notice given by the court to:
    *David J. Skalka
    Scott D. Jochim
    Trev E. Peterson
    Rebecca Abell Brown

*Movant is responsible for giving notice to other parties if required by rule or statute.